Good morning, Your Honors. May it please the Court, I'm Robin Redow, representing the appellants. I'd like to reserve four minutes for rebuttal. I'd like to start with the basics. This was an appeal, this is an appeal from a summary judgment ruling. When a trial court is faced with summary judgment, regardless of how ERISA law works, regardless of how trust law works, the non-moving party gets the benefit of the doubt. The court is required to accept as true all evidence, other than that which a reasonable jury couldn't possibly accept, and draw all inferences in favor of the non-moving party. Our case has the additional overlay that the district court did not sustain a single evidentiary objection. The DOL did make objections, but the district court didn't rule on them. Those objections are out of the case. So 100% of our evidence was properly admitted. So the question is, was there any possible basis on which the district court could refuse to consider 100% of our evidence, which is what it did. Well, let me start with a reasonable compensation to see whether that's out of the case. Two cases in the circuit, Patelka and Barboza, address that issue. And you suggested that maybe it should be an en banc review, which of course is beyond the power of this panel. Is that still in the case? Well, it is in the case to the extent we can persuade the court to review it en banc. We've made the argument in order to... Well, not here, not for the panel. Well, no, and that's not the issue I'm addressing, Your Honor. There are two distinct aspects of funds that City National could receive. It could be compensation, or it could be reimbursement of direct expenses. It seems to me that what you just stated addresses more the damages issue. It does. That is, there be some issue as to the computation. Whereas as far as the liability issue, are you contesting that? Not in this appeal, Your Honor. Obviously, we don't agree that we violated ERISA, but this is all about what in a commercial case you would call damages. It's the calculation, what loss, if any, did the plan suffer? And the mathematics of that is, there's the revenue sharing that City National obviously received, and the DOL's prima facie case was, you received X amount of... You committed these violations, you received four million plus of revenue sharing, and now it's up to you to show that that revenue sharing actually went to pay direct costs. So this line of scrimmage here is about the extent to which we offered admissible evidence of our direct costs. Compensation is an issue that lurks in the case, but really the question is, what did this evidence show, and was it sufficient to meet whatever standard is required? And again, on summary judgment, we get the benefit of the doubt. Can you just dive in? I mean, you have, there are about half a dozen, at least, discrete buckets of damages that I think you put in play. You're not going to cover them all. Is the biggest ticket item the cost of the employees? It is, Your Honor. Do you want to just dive into that? Because I need help with that. All right. The big picture issue is that the district court, the DOL argued, and the district court concluded, there can't be any doubt about whether these were, these expenses were incurred, and you need to show it with contemporaneous records. And the DOL's position on this isn't really entirely clear, but the district court adopted the idea that, well, you really should have contemporaneous time records. Because recall, the Retirement Service Division serviced 200-plus plans, although the city national plan was the largest one and represented about 10% of the plan. I mean, I need help with, like, the specifics. Are there two of those 70 employees who only service the city national plan? Let me get right to that. There were two employees whose primary task was to take, they didn't, I think one of them actually worked for Human Resources and not the Retirement Services, but they're city national employees, and they were devoted to these plans. That was their primary employment responsibility. And the evidence is, from a couple of different sources, that had those, had the city national plan not been part of Retirement Services Division, their positions would have been terminated. It's also correct that there were about, and Mr. Imburgia details this in his report, there were about 70 employees who worked for Retirement Services Division. What he did was to take the financial statements, the internal financial statements, the cost of running that business operation for all the plans. He said, we have 10% of the participants, the city national plan has 10% of the participants, there's about 70 employees, so I think the cost of about 10% of those employees, six to seven employees, represents the cost of operating that plan. And what's the basis for assuming that the right comparison is sort of the percentage of plan participants as opposed to the number of plans? Because it's not obvious to me that the amount of time an employee would spend on a day-to-day basis would correspond directly to the number of participants in a given plan. Well, Your Honor, it's a fair question and I think it's one that a trier of fact would probably wrestle with. The question is whether on summary judgment, when we have someone with a vast amount of experience, as Mr. Imburgia has, who compiles the information, says, in this context, this is an appropriate way of evaluating expenses, this is what companies do when they evaluate expenses like this. If city national was trying to estimate the cost of what it costs to run this plan, this is the approach they would use. How much do you spend and how do you divide it up? That evidence passes the summary judgment test. That meets our non-moving party burden, whether or not we can convince a trier of fact. But the way we presented the evidence, we did not assume that it's exactly 10%. We had two employees that the evidence said worked not exactly exclusively, but primarily their positions would have been gone. So you got those two people pretty definitely and four to six others. So our presentation in the final set of motions was, we don't know the exact number, but we know it is no less than three. We picked the irreducible minimum number of additional employees whose positions would be gone if this plan wasn't there. So we've got the two that we know were working essentially full time for the plan. Did you have any contemporaneous evidence of these expenses that you could have offered? We did offer it. The evidence that Mr. Mberger used was the bank's internal financial statements that recapped the cost, all the costs, of operating the retirement services division. No, we did not have contemporaneous time records. No business like this. And we're talking about time records like lawyers keep, you know, six minutes or 15 minutes or whatever. I'm not aware of any business on this planet besides lawyers and accountants who keep time records like that, but apparently retirement services record-keeping operations are supposed to. I should add, by the way, you know, there is no requirement anywhere in the law that that kind of record be kept except some DOL regulations which talk about record-keeping and certainly in that it would have been great if we kept those records. But as Judge Watford said, this is a question essentially of proving damages, of proving loss. It's not a question of whether we violated a record-keeping requirement. The question is how much did it cost to operate this record-keeping operation and the records that we used, including contemporaneous cost records, although not individual employee-by-employee time records, those are contemporaneous records. And if this were a case involving, you know, lost profits, damages, any kind of conventional business case, that evidence would be accepted. But as a fiduciary, do you have a different duty to keep records than an ordinary business? No, you don't. There is no law in ERISA, in the case law, anywhere else. And, Your Honor, you'll find at page 40 of our brief, right around there, we cited some cases in other contexts, also ERISA contexts, where the law actually requires record-keeping, such as wage information when there's a suit for back pay or pension contributions. You have to keep wage records, but if you don't keep them, that doesn't keep you from presenting evidence. Fiduciaries are certainly held to an extremely high standard, but record-keeping of this type, daily time records of where you do your work, again, it might be a good idea in hindsight, but that's not a legal requirement anywhere. And what's important about this, this whole concept of having to prove the loss or limit the loss, which is really what our evidentiary burden was, of having to do it beyond a reasonable doubt standard. The whole source of this, the entire source of that idea is one case, this Court's decision in Kim v. Fujikawa, and the case doesn't say that. And the authorities on which it relies say just the opposite. The district court criticized us for relying on averages and estimates, but I'd like to take a moment to explore that decision and its antecedents, because they really are what this case is all about. Kim was a case in which there were some welfare funds, this was in Hawaii, there were some welfare funds, and there were some people called the Outer Island Representatives, who were employed by the fund and supposedly working for the fund, but they were actually doing work for a union. And so there was a violation of ERISA, fund assets were being misused, and the suit was to recover the money that had been spent. What happened was that the defense had no evidence demonstrating how much of the Outer Island Representatives' work had benefited the funds. As far as the opinion reveals, there's just no evidence at all. Now, the court decided, well, how do you assess this sort of situation? It referred to some cases from other circuits that I'll very well settled. You put the burden on the fiduciary to establish, I've made a prima facie case, I've proven a violation of your fiduciary duties, I've made a prima facie showing of laws, you have to show me, you have the burden of proof now to limit that law, so show me that I'm wrong. That is an ancient principle that's been around for a long time, and when you would apply it in a context, as occurred in Kim, where the defense has no evidence to offer, the defense loses, and the entire amount becomes the defense liability. The same thing happened in Patelco. There was no evidence. Evidence was offered, but it was rejected as inadmissible. So that evidence was off the table. The defense had no evidence. But this issue about doubt and approximations has no foundation in Kim. And the principal case on which Kim relied is a case called Lee versus Engel. And that's the case that I think we need to look to. It's also an ERISA case. And what happened in that case is some corporate executives used trust funds to invest as part of their personal investment strategy. They would buy into corporations and corporate control battles, and they used the funds, the trust funds, money. An ERISA violation. And the court confronted with this, found the violation, and found that these executives had made profits. But the question is, do they have to disgorge a hundred percent of the profits? And that is the balance the court was striking. The court didn't say, no, you have to give up all your money. Rather, the court recognized that there was a very difficult balancing task between assessing how much of the profits came from the executives' own money, their own ideas, their own strategy, and how much had to be disgorged because it came through the use of the funds money. And the court recognized there, the district court may be only, I'm quoting from Lee versus Engel at page 138, the district court may be only able to make a rough approximation. It should resolve doubts in favor of the plaintiffs. And here's the language that was partially quoted in Kim. This course should avoid the two unfair results of depriving defendants of the profits earned by their own efforts, or depriving the plaintiffs of any recovery simply because, in essence, the defendants have made it difficult. The point is, the court must strike a balance. The court must make approximations. The court must use estimates because in many cases it is impossible to come up with precise estimates. Well, did the court reject the methodology of the approximation, or did it question the reliability and the sufficiency of the facts and data? Which of the two, or maybe it's not clear which it did. In our case? Yes. In our case, the court rejected our evidence because there were no contemporaneous time records and because there was doubt. Now, there's no time to go through all of this. There are components of our evidence as to which we think there actually is no doubt at all. It's mathematically exact. But my question is, did it reject it per se because there were no contemporaneous record, or did it accept the evidence but found it wanting in a way? It's hard to say. What it said was there were no contemporaneous records, and what it said was the evidence is in doubt. And what the authorities say, and I would ask the court to look not only at Lee, but at Sheldon versus MGM, which it cites. Doubt happens in these cases. There are no cases. Our case is probably as doubt-free as almost any ERISA case that has ever come before a court. But in traditional damages analysis, where one has to allocate between the plaintiff's profits or other losses between the plaintiffs and defense, approximation is the order of the day. And what Judge Learned Hand said in Sheldon, which Lee relied on and which this court has quoted a couple of times in comparable context, including CREAM records, which is cited in our brief, under the guise of resolving all doubts against the defendants, we will not deny the one fact that stands undoubted. Now, in that case, it had to do with the production. You know, the plaintiff doesn't get all the profits. The defendants made a significant contribution. The one fact that stands undoubted in our case is that City National spent millions of dollars running the Retirement Services Division. Was it two million, two and a half, three million? We can debate that, but it was not zero. And essentially deciding that it cost nothing to run this operation provides a $7 million windfall. And by the way, the accounting included money that we never even received, but that's a separate issue. To allow a $7 million windfall contradicts everything that the authorities on which Kim relied stand for. I'd like to reserve the rest of my time. You have no time left, but we'll give you a couple of minutes. You're over now. It starts to tick up, of course. Over my 15? Yes. Yes. But we'll give you a couple of minutes for rebuttal. Let's hear from... Yes. I'm looking at the wrong table. Counsel for the government. Good morning, Your Honors. Jeff Hahn for the Secretary of Labor. Let me start by simplifying things. The vast majority of this appeal, including liability, damages, and the statute of limitations, can be resolved on the basis of a few core undisputed facts, basic legal rules, and without delving into any of the documentary evidence. City National does not dispute that it hired itself to service its own plan, that it paid itself by taking a cut of the plan's mutual fund investments through a process called revenue sharing, that it regularly received these payments for over a decade without tracking or having any idea of its expenses, and that not a single aspect of this arrangement was reviewed or approved by an independent, non-conflicted fiduciary. In the face of these facts, even City National does not appeal the court's finding that it breaches fiduciary duties of prudence and loyalty. And most important, City National does not dispute that unless some exemption or exception applies, this arrangement on its face is quintessential self-dealing prohibited by ERISA Section 406B. And as Judge Rubino pointed out, we know from this court's decisions in Patelco and Barboza that one such exemption, the one for reasonable compensation, does not apply as a matter of law to self-dealing, and therefore that exemption is inapplicable, and the City's arguments are best for an en banc petition, not for this panel. So that leaves only one possible circumstance in which these revenue sharing payments could possibly be permissible, and that is if they can somehow be re-characterized as reimbursement for actual direct expenses incurred by City National. And here is the important point, as defined in the Secretary's Direct Expense Regulation 408C2 regulation. And there are two components of that regulation that render these revenue sharing payments structurally incapable of qualifying as direct expense reimbursement, regardless of the nature or quality of the expense evidence City National has marshaled to this point. First, the regulation requires reimbursement only for actual expenses. And because of that requirement, the Department, and we cite this in Advisory Opinion 8058A, said that a per diem allowance cannot act as a proxy for direct expense reimbursement because at any given month, the per diem allowance could exceed the actual expenses. So too here, the same problem exists with City's revenue sharing payments. They are untethered to any actual expenses. So at any given moment, any given month, they could have exceeded the actual expenses. Okay, let's just pretend, because I know it doesn't line up exactly with the facts, but let's just pretend that there really were two people whose exclusive job was to service the City National plans, and actually, there were no other employees who did anything, right? So we would be able to isolate exactly what the direct cost or whatever the direct expense would be, right? Just figure out their salary benefits and whatnot. I guess I don't understand, and they came forward with records that documented this is how much we paid these two individuals. You're still saying that that wouldn't be deducted from the showing, getting reimbursement for employee expenses or printing costs can be done. That is certainly possible. The problem was how it was done here. The structure of this arrangement renders it incapable of qualifying under the regulation as reimbursement for direct expenses. The second part of the regulation, which I think will address this a bit as well, that renders this structurally incapable of qualifying as direct expense reimbursement, is the regulation allows for advances. So the plan can advance money, let's say, in a month to cover direct expenses for that month. However, only if the fiduciary, and I'm quoting, accounts to the plan at the end of the period covered by the advance. So if the plan advances money for a month, the fiduciary incurs expenses that month, then at the end of the month, the period, at the end of the period covered by the advance, they must account to the plan, reconcile their expenses with what they received in an advance, refund to the plan any excess. That clear, and so if you want to analogize City Nationals payments, revenue sharing payments to anything, because they were untethered to any expenses, it's sort of more like an advance. There was no reconciliation done. They did not track their expenses. They did not submit invoices. I don't understand how that regulation has any application to the hypothetical I pose. I guess that's what I'm missing. We're not talking about advances. We're not talking about reconciliation. We're talking about we know exactly how much it costs City National in terms of its own out-of-pocket payments to service the plans, and so I guess I'm still at a loss to understand why isn't that, why can't that be deducted from the damage amount? Because it wasn't free. It wasn't like, we know it wasn't free. It wasn't zero. The number is not zero. It's some number north of zero, and in my hypothetical, I don't understand why there'd be any uncertainty about what the amount to deduct would be. Yeah, that's my next point. So these revenue sharing payments cannot qualify as reimbursement for liability purposes. So City National has this illegal arrangement, and it cannot be exempt either by reasonable compensation or by this reimbursement allowance. Because of that, it would be to apply a more lenient standard at the damages stage to measure direct expenses. The same thing that they argued was excused at the liability stage under the regulation, but to apply a more lenient standard at the damages stage and to say, you know, even though you didn't reconcile, even though these weren't tracked, you can still get reimbursed for them as an offset, would directly undermine the regulation and the purpose it serves. And so there's nothing to say the standard for how to do this, as Kim said, ERISA is silent. And so in the face of that silence, the courts should apply a federal common law, and the federal common law rule, as this court said in Salyer, should be the rule that best comports with ERISA's regulatory scheme, and to apply a different rule at the damages stage than at the liability, affirmatively argued that its expenses were reimbursable direct expenses under the regulation. Now, at the damages stage, they're saying, well, they're not even arguing that point. They're not arguing that these are reimbursable under the regulation. They're saying that under some principles of what they call conventional evidence, that these same expenses should get credited as an offset against damages. And that would eviscerate the regulation if that were allowed. What about the argument that, while that may be so, on the summary judgment standard, we ought to have a trial on the merits, and these matters can then be decided by the appropriate burden, as opposed to foreclosing the weighing of these evidence in a different forum. What's your answer to that? Well, the answer to that is the summary judgment standard, what's important is that the material facts are not, in fact, in dispute. This was not, this arrangement was not meant to be reimbursement. There was never any reconciliation done. There was never, the employee expenses, I just said as an example, were not tracked. This was all a post hoc exercise. And so the core facts, that this was a self-dealing arrangement, that there was no reimbursement actually done, or reconciliation that occurred during the manner of law, these cannot count as reimbursement for direct expenses as for liability or for damages. Well, that is not the basis on which the district court ruled in your favor, right? You've articulated that as an alternative basis for affirmance. But my understanding of what the district court said was more along the lines of what Judge Roberino was alluding to earlier, which is just that, yeah, you've given me some stuff that you claim is sufficiently reliable, but this is just estimates and averages or whatever the terminology was, and that's just not good enough at the damages stage. So isn't the district court's basis for ruling in your favor different from what you've just given us? Well, I do think the district court did focus to some degree on the failure to track expenses. But yes, the district court did focus on the quality of the evidence. That's true. But this court can't affirm summary judgment on any basis in the record. So I don't think we need to necessarily focus on the district court's, you know, ostensible rationale. Well, it's just, I take it you made this argument below and the district court simply didn't find it persuasive? Well, the argument was made below that these expenses were not reimbursable under the regulation, and that was why... For liability purposes? For liability purposes. I'm talking about at damages. Correct. Yeah, well, the damages... Because your argument to us is simply doesn't even matter. They could have come up with a mountain of the most reliable evidence, you know, in human history, and it wouldn't have mattered because as a categorical matter, none of this can be offset. And that's what I'm saying. I don't remember the get into whether the evidence was sufficiently reliable. Yeah, the district court, again, did not... That was, I agree, was not the basis of the district court's decision. But again, I would say that any basis in the record to support summary judgment is permissible to affirm upon. But are you abandoning the rationale that the evidence was not sufficient and arguing now that as a matter of law, it doesn't really matter? No, we're not, Your Honor. In fact, you know, there's substantial problems with the evidence, as we pointed out in our brief. Just to take an example, I mean, if you look at the employee salaries, for example, the evidence on that is all over the map. The city national did three different exercises on how to calculate their direct expenses. They did a time and motion study during the investigation where they tried to reconstruct what they spent on the plan. At liability stage, they submitted evidence by how much the plan constituted as a proportion of their overall service provider work. At the damages stage, they then looked at a couple of employees, and they did a couple of hypothetical scenarios. So it's really all over the map. And just as one example, printing and mailing costs, there are invoices they submit that do not at all make clear that they're tied to the plan. There's one invoice that I can point to at ER 1173, which refers to services being provided by the company, the third-party provider, to something like 31,000 participants. That's way more than we're in this plan. It's shifted away from the employee costs, and that's fine. I know there are other buckets. But just going back to the two employees, at least whose principal duties it sounds like you guys don't dispute were to service the plan, why wouldn't at least the majority of their salaries not be subject to offset? Again, it could be. I mean, in a vacuum, if you have employees who were solely dedicated to servicing a plan, those could be potentially reimbursable. But the problem is the way this was structured, these revenue-sharing payments were not intended to be a reimbursement, and there was no process followed during the time in question to actually reconcile the revenue-sharing with the expenses. And so to then take an expense that was not reimbursable in the first instance would undermine the regulation. Had they done this properly, City National had options here. At the outside of this whole arrangement, they could have hired an independent fiduciary to approve this compensation arrangement, in which case it would not be self-dealing, and in which case they could avail themselves of a reasonable compensation exemption, and they wouldn't be here today, assuming the compensation was reasonable. They also could have actually treated this as reimbursement. They could have tracked their expenses, received the revenue-sharing payments, and refunded any money back to the plan in exchange. Well, is this a backdoor way of getting reasonable compensation? Exactly. This court's, if this were allowed, I mean, if you think about it. But that's not what happened in the district court. I think that's the problem. It could have said this is a back way, and we don't really care about your documents. But the judge apparently delved into it at some detail, so I guess he opened the door. I'm not sure what happened there. Yes, he did delve into it. But I do think the legal proposition remains, regardless of what the court said. It would absolutely be a back door. I mean, this court in Patelco and Barbosa said the reasonable compensation exemption in 408b2 and c2 does not apply to self-dealing. And so if City National's framework were permissible, you could have clearly illegal self-dealing, and then subsequently at the damages stage, they could just say, well, I did x, y, and z, so credit me for all of these. Look, they add up to more than the amount I got in compensation, and therefore, you know, there's no damages. That would make a mockery of this court's decisions in Patelco and Barbosa and would hollow out the... Let me go back to the issue of summary judgment, which is if we are going to deal with these figures, aren't there two narratives here? And maybe that narrative will ultimately emerge. But have we short-circuited this process at this point? Unless we take the view that as a legal matter, it doesn't really matter. But if we don't take that view and we begin to look at these figures, which are complicated, and all these reports and the reply information that was submitted, et cetera, isn't that really more of a trial matter? Well, I do think there... Certainly if there's a genuine dispute as to evidence, it could be a trial matter. I think for a lot of these items, there really shouldn't be a dispute. I mean, at the very least, you know, it's the city's burden to prove what portion of its activities benefited the plan. And so, you know, it's appropriate for the court to say, if your case is fair to say you cannot meet that burden even on summary judgment. I'm happy to address any questions about specific evidence, but I do think there are problems with all of it. And if you want to talk about some reply evidence, I'm happy to. One other question. Is there anything in the regulation that requires the fiduciary to do recordkeeping of some sort? To do recordkeeping in terms of... In other words, to have maintained these kind of contemporaneous expenses. Sure. I think it certainly would be a fiduciary, a general fiduciary, I think, duty to... Your opponent said there is no such a law. Well, what I'm saying is, if you're going to be seeking reimbursement for expenses, I think it would be a fiduciary, you know, basic duty of prudence to ensure that you are getting a reimbursement only for your expenses, which would require keeping records. And like I said, the regulation does have this advanced provision, which says that if you are being advanced money, you certainly have to reconcile what you were advanced at the end of the period covered by the advance with the expenses that you've incurred. Okay. Thank you, counsel. Thank you, Your Honor. Let's put two minutes on the clock for rebuttal. Thank you, Your Honor. The answer to just about everything counsel said is Section 1109 of ERISA, and the very well set... which requires the defendant to make good the loss to the plan, and the very well settled trust law principle, which has been incorporated into ERISA law, which is that the goal of 1109 is to put the plan where it would have been without the violations. That means that the plan can... to the extent the plan can demonstrate the cost of running the retirement services division, that's not part of the loss. But the goal here is instead of making good the loss, is to essentially impose a forfeiture. And by the way, the theory that you just heard is not the theory on which the case was argued to the district court. It was essentially a given that to the extent City National could adequately prove specific direct costs, those were deducted from the total of revenue sharing, and the DOL conceded some of those costs, some of the auditing costs, some of the postage and mailing costs, some of the money that City National rebated, that is, revenue sharing it received that it turned over to the plan. So this idea of an absolute forfeiture because you don't keep records is simply not how the case was argued below and not how the district court decided. But if you don't keep records by choice, can you later argue that we don't have any records? And therefore, we're going to estimate it. In other words, I think your opponent is pointing out that on day number one, you could have put into place a machinery for keeping records that would have justified the reimbursements. That's correct. And, of course, hindsight's a great teacher. But the point is, to the extent we're able to prove, we don't have to prove it beyond a reasonable doubt. Right. We're allowed to use estimates. We're allowed to use approximations. And to the extent there are multiple cost scenarios, they can get the benefit of the doubt by maybe the court choosing the lowest of those as an offset. There are lots of ways to do it, none of which involves a forfeiture. ERISA and trust law do not contemplate forfeitures, but that's what the district court awarded. Thank you. Thank you, counsel. The case just argued is submitted.
judges: Tashima, Watford, Robreno